1

**GREENBERG TRAURIG, LLP**
Robert J. Herrington (SBN 234417) (HerringtonR@gtlaw.com)
Matthew R. Gershman (SBN 253031) (GershmanM@gtlaw.com)
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone:  (310) 586-7700
Facsimile:  (310) 586-7800

*Attorneys for Defendant Global Tel*Link Corporation*

2
3
4
5
6
7

8

## UNITED STATES DISTRICT COURT

9

## NORTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16

| | |
|---|---|
| DAVID W. MARTIN, an individual, <br><br> Plaintiff, <br><br> v. <br><br> GLOBAL TEL*LINK CORPORATION, an Alabama corporation, <br><br> Defendant. | Case No. 4:15-cv-00449-YGR <br><br> [Assigned to Honorable Yvonne Gonzalez Rogers] <br><br> **REPLY IN SUPPORT OF DEFENDANT GLOBAL TEL*LINK CORPORATION'S MOTION TO TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA** <br><br> Date:       April 28, 2015 <br> Time:       2:00 p.m. <br> Place:      Oakland Courthouse, <br>                Courtroom 1, 4th Floor <br><br> Action filed: December 5, 2014 <br> Trial:       None Set |

17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

I.   Introduction..................................................................................................1

II.  The Opposition Confirms That This Action Should Be Transferred, Pursuant
     To Section 1404(a), To The Central District Of California. ....................................3

     A.   Plaintiff's prior filings confirm that this action could have been
          brought in the Central District of California. ...................................................3

     B.   The Opposition confirms that the interests of justice favor transfer to
          the Central District of California...................................................................4

     C.   The Opposition confirms that the remaining factors weigh in favor of
          transfer or are neutral. ..............................................................................6

III. Transfer Under Section 1404(a) Also Would Further The Policy Of The
     First-To-File Rule. ......................................................................................9

IV.  Conclusion ................................................................................................11

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Berenson v. Nat'l Financial Servs., LLC,*
    319 F. Supp. 2d 1 (D.D.C. 2004) ............................................................................ 8

*Bibo v. Federal Express, Inc.,*
    No. C07-2505 TEH, 2007 WL 2972948 (N.D. Cal. Oct. 10, 2007) .................... 7, 11

*Cadenasso v. Metropolitan Life Insurance Co.,*
    No. 13-cv-05491-JST, 2014 WL 1510853 (N.D. Cal. Apr. 15, 2014) .................. 5, 10

*Cardoza v. T-Mobile USA Inc.,*
    No. 08-5120 SC, 2009 WL 723843 (N.D. Cal. Mar. 18, 2009) ............................. 8

*Continental Grain Co. v. The FBL-585,*
    364 U.S. 19 (1960) ................................................................................................... 4

*Dubee v. P.F. Chang's China Bistro, Inc.,*
    No. C10-01937 WHA, 2010 WL 3323808 (N.D. Cal. Aug. 23, 2010) ................. 11

*Freedom Mortgage Corp. v. Irwin Fin. Corp.,*
    No. C.A. 08-146 GMS, 2009 WL 763899 (D. Del. Mar. 23, 2009) ...................... 9

*Garcia v. 3M Co.,*
    No. C-09-01943 RMW, 2009 WL 3837243 (N.D. Cal. Nov. 16, 2009) ............... 5, 9

*Hawkins v. Gerber Prods. Co.,*
    924 F. Supp. 2d 1208 (S.D. Cal. 2013) ............................................................... 5, 9

*Hill v. Robert's Am. Gourmet Food, LLC,*
    No. 13-cv-00696-YGR, 2013 WL 3476801 (N.D. Cal. July 10, 2013) ................ 10

*Inherent.com v. Martindale-Hubbell,*
    420 F. Supp. 2d 1093 (N.D. Cal. 2006) ............................................................... 2, 6

*Koehler v. Pepperidge Farm, Inc.,*
    13-cv-02644-YGR, 2013 WL 4806895 (N.D. Cal. Sept. 9, 2013) ....................... 10

*London & Hull Mar. Ins. Co. v. Eagle Pac. Ins. Co.,*
    No. C 96-01512 CW, 1996 WL 479013 (N.D. Cal. Aug. 14, 1996) ...................... 1

*Lou v. Belzberg,*
    834 F.2d 730 (9th Cir. 1987) ............................................................................... 2, 6

*Nat'l Super Spuds, Inc. v. New York Mercantile Exch.,*
    425 F. Supp. 665 (S.D.N.Y. 1997) ........................................................................ 7

GTL'S REPLY I/S/O MOTION TO TRANSFER VENUE          Case No. 4:15-cv-00449-YGR

TCO 361254776v5

*Pacesetter Systems, Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982) ............................................................................................ 11

*PETA, Inc. v. Beyond the Frame, Ltd.*,
    No. CV 10-07576 MMM SSX, 2011 WL 686158 (C.D. Cal. Feb. 16, 2011) ..................... 1

*Prime Healthcare Servs., Inc. v. Serv. Employees Int'l Union*,
    No. 13-cv-3831-YGR, 2014 WL 5422631 (N.D. Cal. Oct. 24, 2014) ............................. 10

*U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*,
    357 F. Supp. 2d 924 (E.D. Va. 2005) ......................................................................... 5, 9

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ................................................................................................... 4, 9

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
    967 F. Supp. 2d 1289 (N.D. Cal. 2013) ......................................................................... 10

**Federal Statutes**

28 U.S.C. § 1391 ............................................................................................................... 3

28 U.S.C. § 1404 ....................................................................................................... *passim*

**Rules**

Federal Rules of Civil Procedure, Rule 42(a) ...................................................................... 5

USDC, Northern District of California Local Rules, Rule 3-13(c) ........................................ 1

USDC, Northern District of California Local Rules, Rule 3-13(d) ....................................... 1

**Other Authorities**

U.S. Census Bureau, chart of population by California counties ............................................ 8

GTL'S REPLY I/S/O MOTION TO TRANSFER VENUE          Case No. 4:15-cv-00449-YGR

TCO 361254776v5

## I.    Introduction

Three other related cases—*Cohen*, *Hernandez*, and *Lee*—all assert the same claims against the same defendant, and they all are pending in the Central District of California.[1]  *Cohen* and *Hernandez* were filed before this case, and *Lee* was the first of the four cases to assert a nationwide putative class (Plaintiff here amended his complaint to assert a nationwide putative class only after he learned about the *Lee* case).  Coordinating these actions before the same court will promote judicial economy and avoid the possibility of inconsistent rulings on, by way of example, discovery disputes and interpretations of law.  Thus, the interests of justice—the most important factor this Court is to consider on this motion—favor transfer to the Central District of California.  *See London & Hull Mar. Ins. Co. v. Eagle Pac. Ins. Co.*, No. C 96-01512 CW, 1996 WL 479013, at *3 (N.D. Cal. Aug. 14, 1996) ("The 'interests of justice' consideration is the most important factor a court must consider, and may be decisive in a transfer motion even when all other factors point the other way.").[2]

Plaintiff nevertheless opposes GTL's motion to transfer venue to the Central District of California.  The opposition glosses over the paramount issues of judicial economy and interests of justice, arguing instead that what should control here is Plaintiff's (i) residency in the Bay Area and (ii) "choice of forum."  Both points fail.

***First***, Plaintiff's argument that Oakland is more convenient to him because he lives in the Bay Area is disingenuous.  Plaintiff initially filed his case in the Southern District of California, where his attorney appears to reside.  If geography were the measure, Los Angeles is far more preferable, as it is

---

[1] Prior to the filing of this motion, *Lee* was ordered transferred to the Central District of California (Dkt. No. 19 [RJN, Ex. E]), but the clerk in the Central District had not yet opened a docket and assigned a case number.  That has since happened.  On April 7, 2015, *Lee* was assigned case number 2:15-cv-02495-ODW-PLA.  On April 10, 2015, Judge Walter declined re-assignment of the *Lee* case to his calendar under the internal procedures governing related cases in the Central District.

[2] In its Notice of Pendency of Other Actions, Defendant Global Tel*Link Corporation ("GTL") notified the Court and Plaintiff of the relatedness and status of the other three cases.  (Dkt. No. 16, filed March 20, 2015.)  Plaintiff had 14 days to respond if he opposed.  *See* Civil L.R. 3-13(c).  He never did.  This Court is now authorized to make any appropriate orders and can even order transfer to the Central District of California on its own motion.  *See* Civil L.R. 3-13(d); *PETA, Inc. v. Beyond the Frame, Ltd.*, No. CV 10-07576 MMM SSX, 2011 WL 686158, at *2 (C.D. Cal. Feb. 16, 2011) ("A court may transfer an action under the first to file rule or 28 U.S.C. § 1404 either *sua sponte,* or upon motion of a party.").

1

TCO 361254776v5

four times closer to Plaintiff's first choice of San Diego, where Plaintiff initially filed this action and argued for venue.  (*See* Dkt. No. 4 [Plaintiff dedicating four of his five pages in his response to an order to show cause to arguing that venue should be in San Diego because of GTL's supposedly "substantial, continuous and systematic" operations throughout California, "including San Diego"].)  Having failed to initially file in the Northern District, Plaintiff can hardly be heard to complain about transferring this case to where three other related cases are pending.  *See Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1101 (N.D. Cal. 2006) (transferring action to New Jersey, over plaintiff's objection and despite plaintiff's fallback request for venue in Oregon:  "[T]he court finds that transfer to Oregon would be inequitable in light of plaintiff's gaming of the venue question.  Plaintiff can hardly complain of the failure to transfer this case to Oregon since it could have brought the action there in the first place.  Having chosen not to do so, it lost its opportunity to litigate this case in Oregon.").

   **Second**, Plaintiff's "choice of forum" argument ignores both facts and law:  (i) his "choice of forum" was San Diego—not Oakland; and, (ii) regardless, it is settled in the Ninth Circuit that a plaintiff's "choice of forum" is far less significant in cases such as this one where a plaintiff seeks to represent a putative national class.  *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).  Ignoring this, Plaintiff instead relies on a district court opinion from the Southern District of New York, arguing that the Northern District is nevertheless preferable to administer this case because GTL's operations in the Northern District supposedly will be important.  (Opp. at 7-8.)  This argument fails.  Plaintiff names no witnesses in the Northern District, and he never explains why GTL's supposed operations in the Northern District would even matter in this nationwide putative class action.  Plaintiff's claims concern the calls received by *anyone* "within the United States" who fits the proposed class description.  Even looking at just the calls allegedly received by Plaintiff, there is no suggestion that those calls originated from prisoners located in the Northern District.  Instead, Plaintiff's own filings acknowledge that the calls he allegedly received could have originated from any prisoner located anywhere in the United States where GTL operates.  (First Amended Complaint, Dkt. No. 9, ¶ 12 [alleging GTL's services are "nationwide" and provided to "inmates in 50 states"].)

*     *     *     *

GTL'S REPLY I/S/O MOTION TO TRANSFER VENUE                    Case No. 4:15-cv-00449-YGR

TCO 361254776v5

In short, Plaintiff appears to be forum shopping to avoid having this case heard in the Central District.  Three other related cases already are pending there and all four actions should be coordinated to avoid duplication and potentially inconsistent rulings.  For these reasons, and for the reasons more fully explained below, this action should be transferred to the Central District.

**II.    The Opposition Confirms That This Action Should Be Transferred, Pursuant To Section 1404(a), To The Central District Of California.**

The parties agree that a two-part test governs here:  (1) the transferee district must be one in which the action "might have been brought;" and (2) the transfer must be for the convenience of the parties and witnesses, and in the interest of justice.  (Motion at 4:24-5:3; Opposition at 6:3-12 [same].)  Plaintiff's opposition confirms that both parts are satisfied and this case should be transferred.

**A.    Plaintiff's prior filings confirm that this action could have been brought in the Central District of California.**

GTL demonstrated that this case could have brought in the Central District of California, because GTL is subject to personal jurisdiction there, and therefore venue is proper.  (Motion at 5:6-12 (citing 28 U.S.C. § 1391(b)(1), (c)(2)).)  Plaintiff's only response is to say that there supposedly is no support for the fact that GTL is subject to personal jurisdiction in the Central District.  (Opposition at 6.)  Plaintiff's own filings demonstrate that his argument is wrong.

Specifically, the sole basis for Plaintiff initially arguing that GTL was subject to personal jurisdiction (and therefore venue) in the Southern District of California was his claim that GTL offers services in San Diego.  (Dkt. No. 1 [Complaint, ¶¶ 2, 8]; Dkt. No. 4 [response to order to show cause at 3:14-19].)  As support for his claim, Plaintiff cited to GTL's website that lists San Diego County as one of many where GTL offers its services.  (*Id.*; *see also* Dkt. No. 9 [First Amended Complaint, ¶ 8 (same)].)  That website also lists every county (but one) located within the Central District of California, including Los Angeles County.[3]  Thus, the evidence Plaintiff previously relied on to argue for venue in San Diego also shows that venue is proper in the Central District.  This case could (and should) have been filed there.

---

[3] *See* GTL Service Locations, https://www.connectnetwork.com/portal at "Locations" tab, search by state for California.

3

GTL'S REPLY I/S/O MOTION TO TRANSFER VENUE        Case No. 4:15-cv-00449-YGR

TCO 361254776v5

**B.**     **The Opposition confirms that the interests of justice favor transfer to the Central District of California.**

GTL established that the interests of justice favors transfer to the Central District, because coordinating the related cases before one court will avoid waste, avoid potentially inconsistent rulings and judgments, promote judicial economy, and make it easier to facilitate any coordinated efforts to resolve the matters informally.  (Motion at 5:13-7:8.)  *See Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) (affirming transfer to another district court where a virtually identical action already was pending:  "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [§] 1404(a) was designed to prevent.").

In response, Plaintiff agrees that the goal of Section 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (cited by Plaintiff in his Opposition at 7).  Plaintiff nonetheless offers two reasons why he thinks transfer of this action somehow would not promote judicial economy.  Plaintiff is wrong about each.

First, Plaintiff asserts there is no threat of inconsistent adjudication between this case and the *Cohen* and *Hernandez* cases because this case is a putative class action.  (Opposition at 7.)  This argument ignores the fact that *Lee* also is pending in the Central District of California and is a putative nationwide class action.  Plaintiff also fails to explain why it makes any difference that *Cohen* and *Hernandez* were not filed as putative class actions.  Nor could he.  The claims in those cases are the same, and Plaintiff's class allegations appear to cover both *Cohen* and *Hernandez*.

Notably, Plaintiff *admits* there is "potential for inconsistent rulings … on pre-trial disputes or on the case's final disposition," but then argues that GTL somehow "failed to provide any specific information that indicates there is a high risk" of that happening.  (Opposition at 7.)  What more information could there be?  GTL already has explained not only in its motion, but also in its unopposed notice of pendency of other actions, that there are three other related cases pending in the Central District against the same defendant asserting the same claims.  That is the exact scenario where courts routinely hold transfer under Section 1404(a) would best serve the interests of justice.  *See, e.g.*,

4

*Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1214-15, 1217 (S.D. Cal. 2013) (transferring to another district court where "five similar cases" already had been filed: "The Court finds that the transfer of this action … would serve the interest of justice due to the possible consolidation of discovery and the conservation of time, energy and money, and the avoidance of the possibility of inconsistent judgments."); *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 937-39 (E.D. Va. 2005) (transferring to another district court where two related cases were pending: "The interest of justice weighs heavily in favor of transfer when related actions are pending in the transferee forum.").

Second, Plaintiff suggests that, because Judge Walter does not have the *Lee* case, this case should not be transferred. (Opposition at 7.) But Plaintiff cites no authority for that proposition, and he wrongly assumes (i) that consolidation under Rule 42(a) could never happen once this case is transferred to the same court as the other related cases, and (ii), absent consolidation, that there supposedly is no judicial economy. In fact, consolidation in the Central District would be possible under Rule 42(a), because the cases would then be before one court and they all involve a common question of law or fact. And, even absent consolidation before one judge, coordination amongst cases in the same location promotes judicial economy and reduces waste. *See Garcia v. 3M Co.*, No. C-09-01943 RMW, 2009 WL 3837243, at *5 (N.D. Cal. Nov. 16, 2009) (transferring action pursuant to § 1404(a) to District of Minnesota where related case was pending in Minnesota *state* court, because, even absent consolidation with the state court action, the "practicalities of making the trials easy, expeditions and economical" weighed in favor of transfer of the federal action); *Cadenasso v. Metropolitan Life Insurance Co.*, No. 13-cv-05491-JST, 2014 WL 1510853, at *11 (N.D. Cal. Apr. 15, 2014) ("even if the case did not get assigned to [the judge presiding over the related case in the transferee court], the Court is convinced that, for the reasons set forth supra, the convenience of the parties and witnesses, and the interests of justice, weigh heavily in favor of transfer").

Thus, the interests of justice weigh in favor of transfer, and only by transferring this action, so that the Central District of California can coordinate the related actions together, can a district court avoid the waste that Section 1404(a) was designed to prevent.

**C.**     <u>The Opposition confirms that the remaining factors weigh in favor of transfer or are neutral.</u>

**Plaintiff's choice of forum.**   GTL demonstrated that this factor is far less significant in cases such as this one where a plaintiff seeks to represent a national class. (*See* Motion at 7:16-22 [citing, among other cases, *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("Although great weight is generally accorded plaintiff's choice of forum, … when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight.")].)

In response, Plaintiff ignores *Lou v. Belzberg*, and instead relies on a case from the Southern District of New York, to argue that his "choice of forum" still should be given deference because the Northern District of California supposedly is preferable for administering this case and protecting the class. (Opp. at 7-8.) Plaintiff is wrong, for several reasons.

First, his "choice of forum" was *not* the Northern District. It was the Southern District, where he initially filed this case. Thus, he cannot be heard to complain that venue will be transferred to a location far closer to the Southern District. *See Inherent.com*, 420 F. Supp. 2d at 1101 (transferring action to New Jersey, over plaintiff's objection and despite plaintiff's fallback request for venue in Oregon: "[T]he court finds that transfer to Oregon would be inequitable in light of plaintiff's gaming of the venue question. Plaintiff can hardly complain of the failure to transfer this case to Oregon since it could have brought the action there in the first place. Having chosen not to do so, it lost its opportunity to litigate this case in Oregon.").

Second, Plaintiff's suggestion that this case centers around GTL's operations in the Northern District is unsupported. Plaintiff does not point to any specific operations or witnesses in the Northern District that are relevant to his claims. Nor could he. This case is a putative nationwide class action concerning calls received by anyone "within the United States" who fits the proposed class description. Even looking at just the calls allegedly received by Plaintiff, there is no allegation that those calls originated from prisoners in the Northern District. Plaintiff's own filings acknowledge that the calls he allegedly received could have originated from prisoners located anywhere in the United States where GTL operates. (*E.g.*, First Amended Complaint, Dkt. No. 9, ¶ 12 [alleging GTL's services are "nationwide" and provided to "inmates in 50 states"].)

6

Third, Plaintiff's reliance on the case from the Southern District of New York is misplaced, for it is easily distinguished.  In that case, the court found the burden of administering the case and protecting the class would be less in New York, because that was where the evidence and class was predominately located.  *See Nat'l Super Spuds, Inc. v. New York Mercantile Exch.*, 425 F. Supp. 665, 668 (S.D.N.Y. 1997).  As shown, the opposite is true here, inasmuch as:  (i) Plaintiff initially filed in the Southern District, thereby conceding that every location in California south of here has adequate access to evidence; and (ii) if any judicial district in California is likely to have more putative class members, it is the more populous Central District.[4]

In short, if Plaintiff's original "choice of forum" in San Diego means anything here, the Central District is more appropriate.

**Convenience of parties and witnesses.**  Again, Plaintiff cannot be heard to complain about inconvenience to him, because he initially chose and fought for venue in San Diego.  As for GTL, the motion established that GTL conducts business throughout California and therefore has no greater connection to the Northern District than it does to the Central District.  (Motion at 7:24-25.)  Plaintiff does not dispute this.  Therefore, if anything, the presence of several other related actions brought against GTL in the Central District makes it more convenient for GTL, because the actions can be coordinated in the same location.

As for third-party witnesses, GTL established that (i) Plaintiff has identified none, and (ii), in any event, Plaintiff cannot claim the Central District would be inconvenient because the Central District is much closer to the Southern District where Plaintiff originally filed this case.  (Motion at 8:8-10.)  In his opposition, Plaintiff still identifies no witnesses in the Northern District.  Instead, he offers only the suggestion that witnesses in the prisons that prompted the calls will be important (Opposition at 8), but Plaintiff *never* says that the calls he allegedly received were initiated by prisoners located in the Northern District.  Again, based on Plaintiff's allegations, the alleged calls could have come from

---

[4] Plaintiff also appears to rely on the *Bibo* case.  *Compare Bibo v. Federal Express, Inc.*, No. C07-2505 TEH, 2007 WL 2972948, at *2 (N.D. Cal. Oct. 10, 2007), *with* Opposition at 7:23-8:19 (virtually identical argument).  *Bibo* is easily distinguished from this case, because, unlike here, *Bibo* did not involve a plaintiff that actually chose and argued for a different forum from the outset.

7

anywhere in the country.  (*See* First Amended Complaint, Dkt. No. 9, ¶ 12 [alleging GTL's services are "nationwide" and provided to "inmates in 50 states"].)

Because Plaintiff seeks to represent a nationwide putative class (First Amended Complaint, Dkt. No. 9, ¶ 31), there is every reason to believe this factor is either neutral or favors transfer to the Central District where substantially more people reside.  *See Berenson v. Nat'l Financial Servs., LLC*, 319 F. Supp. 2d 1, 4 (D.D.C. 2004) (ordering transfer and taking into consideration the relative distribution of potential class members).  Plaintiff offers no response, except to suggest it is just an opinion that more potential class members live in the Central District.  (Opposition at 9.)  The U.S. Census Bureau would disagree.[5]

**Ease of access to evidence.**  As demonstrated, Plaintiff's claim is that certain GTL phone calls made to all fifty states violated the TCPA, and there is no reason to believe that the Northern District or the Central District will have any greater access to proof than any of the other district courts in the United States.  (Motion at 8:11-14.)  In response, Plaintiff argues only that he allegedly received calls in the Northern District.  (Opposition at 9.)  That misses the point.  This is not an individual action, and the number of calls Plaintiff allegedly received are dwarfed by the number of calls received by putative class members all across the nation.

**Feasibility of consolidation with other claims, and relative court congestion and time to trial in each forum.**  The motion explained, and Plaintiff does not dispute, that "[t]he feasibility of consolidation is a significant factor in a transfer decision, and even the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties."  *Cardoza v. T-Mobile USA Inc.*, No. 08-5120 SC, 2009 WL 723843, at *5 (N.D. Cal. Mar. 18, 2009).  Thus, as GTL established, because this putative class action fully envelops the previously filed *Cohen* and *Hernandez* cases, transfer of this action to the court already handing those first-filed cases and the other related case (*Lee*) would promote judicial economy, reduce overall court congestion, and eliminate needlessly duplicative judicial efforts.  (Motion at 8-9

---

[5] *See* U.S. Census Bureau Website, chart of population by California counties, http://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?pid=PEP_2014_PEPANN RES&prodType=table (last accessed April 9, 2015).

GTL'S REPLY I/S/O MOTION TO TRANSFER VENUE          Case No. 4:15-cv-00449-YGR

TCO 361254776v5

1  [citing, *Garcia v. 3M Co.*, No. C-09-01943 RMW, 2009 WL 3837243, at *5 (N.D. Cal. Nov. 16, 2009)

2  (transferring action pursuant to § 1404(a) to District of Minnesota where related case was pending in

3  Minnesota *state* court, because, even absent consolidation with the state court action, the consideration

4  of the "practicalities of making the trials easy, expeditions and economical" weighed in favor of transfer

5  of the federal action)].)

6       In his opposition, Plaintiff agrees that this would "be the case enveloping *Hernandez* and

7  *Cohen*." (Opposition at 10.)  Still, Plaintiff suggests those cases and *Lee* should be transferred here.

8  Plaintiff is wrong, and he cites no authority for his novel argument that he can file first in the Southern

9  District, fight for venue there, lose, have this case moved to the Northern District, and then pull all other

10 related cases (including earlier filed cases) to his venue.  Of course, the law favors transferring cases to

11 the location where several other related cases already are pending, and not the other way around.  *See,*

12 *e.g.*, *Hawkins*, 924 F. Supp. 2d at 1214-15, 1217 (transferring to another district court where "five

13 similar cases" already had been filed); *U.S. Ship Mgmt., Inc.*, 357 F. Supp. 2d at 937-39 (transferring to

14 another district court where two related cases were pending).

15      **Familiarity with applicable law, and any local interests in the controversy.**  The motion

16 established, and the opposition agrees, that these are neutral factors.

17 **III.   Transfer Under Section 1404(a) Also Would Further The Policy Of The First-To-File Rule.**

18      GTL's motion was expressly grounded on Section 1404(a).  (Dkt. No. 17 [Notice of Motion at

19 1:2-8 (citing 28 U.S.C. § 1404(a)].)  Because the goal of Section 1404(a) is the same as the goal of the

20 first-to-file rule,[6] GTL noted in the moving papers that transfer under Section 1404(a) also would further

21 the policy of the first-to-file rule.  (Motion at 6:20-7:5.)  Although that point was made in just 14 lines of

22 GTL's moving papers, Plaintiff spends nearly all of his introduction and another 2.5 pages in his

23

24

25      [6] *Compare Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (goal of Section 1404(a) "is to prevent
the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against
26 unnecessary inconvenience and expense"), *with Freedom Mortgage Corp. v. Irwin Fin. Corp.*, No. C.A.
08-146 GMS, 2009 WL 763899, at *4 (D. Del. Mar. 23, 2009) (first-filed rule "is a rule based on sound
27 judicial administration, comity, and equity. ... Its purpose is to avoid differing outcomes on the same
issue by two sister courts, thereby minimizing duplicative litigation in different fora, and saving judicial
28 resources.").

GTL'S REPLY I/S/O MOTION TO TRANSFER VENUE                    Case No. 4:15-cv-00449-YGR

TCO 361254776v5

opposition arguing that the first-to-file rule would not apply here.  In doing so, Plaintiff misstates GTL's motion and the law.

First, Plaintiff accuses GTL of misstating facts, suggesting that GTL said *Lee* was a first-filed action.  (Opposition at 2, 5-6.)   Plaintiff is incorrect.  While noting that *Lee* was the first among these four related cases to pursue a nationwide putative class action, GTL stated expressly that *Lee* was filed three days after this action was filed.  (Motion at 4.)  GTL's discussion regarding how transfer under Section 1404(a) would further the policy of the first-to-file rule was addressed only to the first-filed actions, *Cohen* and *Hernandez*.  (Motion at 6:20-7:5.)

Second, Plaintiff argues that, because this case is a class action and the first-filed cases are individual actions, there is no identity of parties.  (Opposition at 1, 4.)  But this Court has correctly observed that the first-to-file rule does not require strict identity of the parties, but rather substantial similarity.  *See Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1295 (N.D. Cal. 2013) (Rogers, J.); *Hill v. Robert's Am. Gourmet Food, LLC*, No. 13-cv-00696-YGR, 2013 WL 3476801, at *3-4 (N.D. Cal. July 10, 2013) (Rogers, J.); *Koehler v. Pepperidge Farm, Inc.*, 13-cv-02644-YGR, 2013 WL 4806895, at *4 (N.D. Cal. Sept. 9, 2013) (Rogers, J.); *Prime Healthcare Servs., Inc. v. Serv. Employees Int'l Union*, No. 13-cv-3831-YGR, 2014 WL 5422631, at *2-3 (N.D. Cal. Oct. 24, 2014) (Rogers, J.).  Thus, for example, this Court has found sufficient similarity of parties where, among other factors, a named plaintiff in one action could become a member of the other action's nationwide class if that class were certified.  *See Wallerstein*, 967 F. Supp. 2d at 1296; *Koehler*, 2013 WL 4806895, at *4.  That is the case here, where the putative classes in this case, if certified, would envelope the *Cohen* and *Hernandez* actions.  (*See* Opposition at 10:3-5 [admitting this case would "envelop[e] *Hernandez* and *Cohen*"].)

Moreover, even where named plaintiffs in two separate actions assert *mutually exclusive* class definitions with *no overlap* between them, this Court still has found sufficient similarity of the parties. *See Cadenasso v. Metropolitan Life Insurance Co.*, No. 13-cv-05491-JST, 2014 WL 1510853, at *10 (N.D. Cal. Apr. 15, 2014) (holding first-to-file rule justified transfer, even where different named plaintiffs in two class actions asserted mutually exclusive class definitions: "Given that [the first-filed case] was clearly filed prior to this case, both cases involve nearly identical issues, and each case is

10

1  brought against the same four Defendants, the Court concludes that the 'first-to-file' rule correctly

2  applies to this case.").  Thus, Plaintiff's argument for strict identity of the parties fails, too.[7]

3  **IV.   <u>Conclusion</u>**

4      For all the foregoing reasons, and for the reasons set forth in the moving papers, the Court

5  should grant this motion and transfer this action to the Central District of California, where judicial

6  economy will best be served through coordination of all the related actions known to be pending in

7  California.

8  Dated:  April 10, 2015                    GREENBERG TRAURIG, LLP

9

10                                By:    /s/ Robert J. Herrington
                                        Attorneys for Defendant
11                                      *Global Tel\*Link Corporation*

12

13

14

15

16

17

18

19

20

21      [7] Plaintiff relies only on two earlier district court opinions for his strict-identity-of-parties argument.
    (Opposition at 4.)  His reliance is misplaced.  In the main, Plaintiff relies on a footnote in *Bibo v.*
22  *Federal Express, Inc.*, No. C07-2505 TEH, 2007 WL 2972948, at *1 n.1 (N.D. Cal. Oct. 10, 2007).  The
    footnote was dicta, because the opinion concerned a motion to transfer pursuant to Section 1404(a)—not
23  under the first-to-file rule—but, to the extent the footnote construed the first-to-file rule to not apply
    where one case is a class action and the other is an individual action, the opinion did not cite any
24  authority for that proposition.  Instead, the footnote cited *Pacesetter Systems, Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982), and even then only for a general statement of the first-to-file rule.  *Id.* at *1
25  n.1.  In any event, *Pacesetter* never said what Plaintiff asserts here.  *See Pacesetter*, 678 F.2d at 95 (not
    addressing this issue because the identical parties were involved in both actions).  The other case that
26  Plaintiff cites is *Dubee*, which, like *Bibo*, never cited any legal authority for the proposition that a class
    action and individual action cannot sufficiently overlap to warrant application of the first-to-file rule.
27  *See Dubee v. P.F. Chang's China Bistro, Inc.*, No. C10-01937 WHA, 2010 WL 3323808, at *2 (N.D.
    Cal. Aug. 23, 2010).

28

                                        11